UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
PETE V. DOMENICI UNITED STATES COURTHOUSE
333 LOMAS BLVD., N.W., SUITE 660
ALBUQUERQUE, NEW MEXICO 87102
TELEPHONE: (505) 348-2280
FACSIMILE: (505) 348-2285

JAMES O. BROWNING
    District Judge

January 23, 2015

**VIA CM/ECF**

| | |
|---|---|
| Turner W. Branch | Daniel R. Warrant |
| Margaret Moses Branch | David A. Carney |
| Branch Law Firm | Baker & Hostetler, LLP |
| 2025 Rio Grande Blvd. NW | 1900 E. 9th Street, Suite 3200 |
| Albuquerque, NM 87104 | Cleveland, OH 44114 |
| | |
| Mary Louise Boelcke | Paul G. Karlsgodt |
| Law Offices of Mary Louise Boelcke | Baker & Hostetler, LLP |
| 6707 Academy Road NE, Suite A | 1801 California Street, Suite 440 |
| Albuquerque, NM 87109 | Denver, CO 80202 |
| | |
| William C. Madison | Theodore J. Kobus, III |
| Michael J. Dekleva | Baker & Hostetler, LLP |
| Madison, Harbour & Mroz, PA | 45 Rockefeller Plaza, 14th Floor |
| P.O. Box 25467 | New York, NY 10111 |
| Albuquerque, NM 87125 | |

    Re:  *Brito, et al. v. Community Health Systems Professional Services Corporation, et al.*
           No. CIV 14-929 JB/CG

Counsel:

    During the Christmas holidays, my parents told me that my father had received a letter from the Lea County Regional Hospital indicting that his medical records had been hacked. The Hospital indicated that all his personal information was safe, but that it intended to provide monitoring services for a year. I told my parents that I had been assigned two possible related cases, and they agreed to opt out of the cases.

    I had my Courtroom Deputy Clerk, Ms. K'Aun Wild, call Turner Branch, and see if he had a list of all potential class members. Mr. Branch advised that getting the hacking letter from the hospital was probably as good an indication that my father is part of the class as anything. My mother also uses local medical service providers and has also indicated a willingness to opt out of

Counsel of Record
January 23, 2015
Page 2

any class.

    I request that the Plaintiffs' counsel prepare out-op forms for my parents to sign in both cases and send them to me as soon as possible.   I will get the forms properly executed and filed.   I attached the Committee on Codes of Conduct's Advisory Opinion No. 90 (June 2009), which suggests that how I am proceeding should address any ethical concern about me sitting on these cases.

    If, however, anyone has any concerns or questions about me presiding over these cases, do not hesitate to contact Ms. Wild ((505) 348-2289), and perhaps we can set up a conference call.  As you consider this matter, be advised that I still have lots of friends in Hobbs and other family members -- my sister-in-law (my brother-in-law's wife) still has some family in Hobbs and my son-in-law has some family in Hobbs, including his grandparents.   I have made no inquiry about their possible involvement, but would not be surprised if I know more people involved in this case.

    Best regards.

                                                                   Sincerely,

                                                                   James O. Browning
                                                                   United States District Judge

Attachment:   as stated

cc:      Weldon and Shirley Browning

COMMITTEE ON CODES OF CONDUCT
ADVISORY OPINION NO. 90

June 2009

**Duty to Inquire When Relatives May Be Members of Class Action**

This opinion considers whether, in a class action brought pursuant to Rule 23(b)(3), a judge must investigate to determine whether the interests of any of the judge's (or the judge's spouse's) relatives within the third degree of relationship, or the spouses of such relatives, place the relatives within the definition of the class. Class membership by the relative would then require the judge's recusal. The Committee notes that, for purposes of recusal, "considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." Commentary to Canon 3C.

The Committee previously advised a judge to undertake such an investigation and, if any of such third degree relatives or their spouses happened to be within the class definition, to ask them if they would be willing to opt out of the class, as Rule 23(c)(2) permits. The Committee has reconsidered the subject and now reaches a different conclusion.

Canon 3C(1)(d)(I) of the Code of Conduct for United States Judges provides:

> (1) A judge shall disqualify himself or herself in a proceeding in which the he judge's impartiality might reasonably be questioned, including but not limited to instances in which:
>
> (d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:
>
> (i) a party to the proceeding, or an officer, director, or trustee of a party[.]

The Judicial Code contains a similar provision. 28 U.S.C. § 455(b)(5)(I). Although the Committee on Codes of Conduct is not authorized to render advisory opinions interpreting § 455, Canon 3C of the Code of Conduct for United States Judges closely tracks the language of § 455, and the Committee is authorized to provide advice regarding the application of the Code.

Our previous advice was based on two considerations. First, we believed that all members of a Rule 23(b)(3) class action are parties within the meaning of Canon 3C(1)(d)(I). The Committee previously advised that all members of a class are parties, whether named or unnamed, so long as they have not opted out of the class.

Second, we thought that if a judge failed to make these inquiries and then, at some later time, had to recuse upon discovering that a third degree relative or spouse thereof was a class member, whatever rulings the judge had already made in the case might have to be vacated.

The effect of our advice was to place judges in the position of having to delve into the financial affairs of third degree relatives who were not members of their household. (Relatives "within the third degree of relationship" include one's parents, grandparents, great grandparents, children, grandchildren, great grandchildren, uncles, aunts, brothers, sisters, nieces and nephews but do not include first cousins. See Canon 3C(3)(a).) Our former advice on this point was somewhat at odds, although not entirely inconsistent, with advice we have previously given that a judge is not bound to keep informed of the financial interests of relatives other than his or her spouse and minor children residing in the household. See generally Canon 3C(2).

The Committee adheres to its previous position that Rule 23(b)(3) class members are "parties" for purposes of Canon 3C(1)(d)(I). (The Committee expresses no view regarding Rule 23(b)(2) class actions. See In re City of Houston, 745 F.2d 925 (5th Cir. 1984).) This straightforward approach not only is consistent with the reasoning of decisions such as In re Cement Antitrust Litigation, 688 F.2d 1297 (9th Cir. 1982), and Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710, 714 (7th Cir. 1986), but also avoids the considerable difficulties that would arise in trying to draw distinctions between Rule 23(b)(3) class members who should be considered parties and those who should not.

The Committee now concludes, however, that a judge in a Rule 23(b)(3) class action does not have a duty to investigate whether his or her relatives within the third degree and their spouses are class members. If at some point the judge discovers that one of them was a class member, Canon 3C(1)(d)(I) would require recusal, but this does not mean the judge, prior to such discovery, was acting unethically by sitting on the case. The situation is thus unlike Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), interpreting 28 U.S.C. § 455(a), a provision comparable to Canon 3C(1), which provides that a judge must disqualify "himself in any proceeding in which his impartiality might reasonably be questioned." See Liteky v. United States, 510 U.S. 540 (1994). Liljeberg applied § 455(a) "retroactively" because the provision's disqualification standard does not depend on the judge's knowledge of the disqualifying facts. In other words, the provision is violated although the judge is unaware of the facts creating the appearance of impropriety. See 486 U.S. at 859-61. However, when a rule contains a knowledge requirement, there can be no violation until the judge obtains the requisite knowledge.

The knowledge requirement flows from the structure of Canon 3C. As Chief Justice Rehnquist said in dissent in Liljeberg, 486 U.S. at 871, with respect to § 455, "[u]nlike the more open-ended provision adopted in subsection (a), the language of subsection (b) requires recusal only in specific circumstances, and is phrased in such a way as to suggest a requirement of actual knowledge of the disqualifying circumstances." The same is true with respect to Canon 3C. The other specifically enumerated examples in Canon 3C either expressly contain a knowledge requirement, or involve situations in which it is almost impossible for the judge not to know of the disqualifying circumstance. See Canon 3C(1)(a)-(e); Liteky v. United States, 510 U.S. at 553-54 n.2.

In the case of Rule 23(b)(3) class actions, however, it is not necessarily true that a judge would know whether his or her relative is a party. If the judge later discovered this fact, the analysis in Liljeberg would not give rise to any retroactive consequences. Canon 3C(1)(d)(I) requires knowledge. Canon 3C(2) assures that judges will have such knowledge with respect to themselves, their spouses and their minor children living in the household: "A judge should keep informed about the judge's personal and fiduciary financial interests and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household." The clear implication is -- and the Committee has so concluded -- that the judge is under no duty to acquire knowledge of the financial affairs of his or her other relatives within the third degree, or of their spouses. Without such information, a judge sitting on a case in which a relative was, without the judge's knowledge, a class member would not be acting in violation of the Code. In addition, cases in which third degree relatives turned out to be members of a class would doubtless fall within the Supreme Court's qualification in Liljeberg that "there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance." 486 U.S. at 862.

In short, the Committee is of the view that the *unknown* presence of a judge's relative as a party in a Rule 23(b)(3) class action does not create a risk of injustice to the parties, and does not undermine the public's confidence in the judicial process -- so long as the judge recuses upon learning of the relative's status as a party. There is thus little risk of the sort of retroactive relief we sought to avoid when we previously advised that a judge should investigate to determine if any third degree relatives fit within the class definition. Accordingly, the Committee is now of the opinion that judges need not undertake such inquiries. Requiring judges to investigate imposes untenable burdens on them and puts judges in the potentially awkward and uncomfortable position of intruding into the personal affairs of those outside their households.